FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y
★ SEP 30 2015 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOYCE L. AMOROSO

        Plaintiff,

   -against-

CAROLYN W. COLVIN
Acting Commissioner, Social Security
Administration,

        Defendant.
----------------------------------------------------------X
FEUERSTEIN, J.

**ORDER**
13-CV-5115 (SJF)

Joyce L. Amoroso ("plaintiff" or "claimant"), *pro se*, commenced this 42 U.S.C. § 405(g) action seeking judicial review of the final determination of defendant Commissioner of Social Security Administration ("Commissioner") denying plaintiff's application for disability benefits. The Commissioner now moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the Commissioner's motion is granted.

### I.    BACKGROUND

#### A.    Administrative Proceedings

Plaintiff applied for benefits on January 3, 2011, alleging a disability beginning on September 9, 2009 (onset date). [Docket Entry No. 14 (Transcript of Administrative Record (Tr.)) 96–97]. On February 28, 2011, the Social Security Administration denied plaintiff's application. Tr. 43–49. She requested an administrative hearing on March 23, 2011, and on November 10, 2011, she appeared with counsel before administrative law judge (ALJ) Seymour Rayner. *Id.* at 19–42. By decision dated December 8, 2011, the ALJ found that plaintiff was not disabled. *Id.* at 7–18. The Appeals Council denied plaintiff's request for review on August 1,

2013. *Id.* at 1–4. This appeal followed. [Docket Entry No. 1]. On September 8, 2014, the Commissioner moved for judgment on the pleadings [Docket Entry No. 14].

B. Testimony

Plaintiff, born April 6, 1949, was sixty (60) years old on the onset date, and sixty-two (62) years old on the date of the hearing. Tr. 22. She graduated high school, and attended college for one (1) year. *Id.* She resides with her sister. *Id.* at 23, 29. She last worked as an office manager and controller for six (6) years until she was laid off on March 25, 2009. *Id.* at 23. She receives social security retirement benefits. *Id.*

Plaintiff was injured on September 9, 2009 in a slip-and-fall in a supermarket. *Id.* at 24. The fall injured her left upper thigh, her left knee, and her right shoulder. *Id.* Her "main complaint is the pain." *Id.* She experiences pain constantly in her left leg, which she rated as either an eight (8) or nine (9) on a scale of one (1) to ten (10). *Id.* at 25. "[S]ome days it could be more." *Id.* Due to the pain, she could only sit for thirty (30) minutes, stand for forty-five (45) minutes, and walk short distances. *Id.* at 26. She also asserted that she experienced pain in her right shoulder, especially when she over-extended it, such as when reaching over her head, and could only lift five (5) pounds. *Id.* Plaintiff is right-handed. *Id.*

Plaintiff ordinarily walks with a cane, but did not bring it to the hearing because she knew that she would not have to walk far. *Id.* at 25. A doctor initially recommended that she use it, but now recommends that she walk without it to strengthen her leg. *Id.* Nevertheless, she felt it necessary to use it in the winter. *Id.*

Plaintiff stated that she could take care of her personal hygiene, dress herself, and drive. *Id.* at 27. However, she could not climb stairs, and could not take out the garbage. *Id.* at 35. For recreation, she sews, knits, and watches television. *Id.* at 27.

C. Medical Evidence

On September 9, 2009, plaintiff went to New Island Hospital after she slipped on applesauce in the supermarket. Tr. 183. She complained of the pain in her left thigh. *Id.* X-rays from the visit revealed "no fracture, dislocation or joint effusion," and "no significant soft tissue swelling." *Id.* at 185.

The following day, Dr. Philip M. Rafiy of Long Island Spine and Orthopedics, P.C., treated plaintiff. *Id.* at 225. She complained of severe pain in her left hip that radiated down to her left hamstring, and severe pain in her left knee. *Id.* Dr. Rafiy's diagnostic impression was a left hip sprain, a left knee MCL sprain, and rule out left hamstring rupture. *Id.*

A September 14, 2009, magnetic resonance imaging (MRI) of plaintiff's left leg revealed a partial retracted tear of the left hamstring, likely partial tear of the biceps femoris, muscle strains, and hemorrhagic edema. *Id.* at 186, 193, 203, 222. The MRI of her left knee revealed mild tendinosis of the quadriceps and patellar tendon with edema, and a probable low-grade tear of the posterior cruciate ligament. *Id.* at 187, 194, 204, 229.

Dr. Rafiy again examined plaintiff on September 24, 2009. *Id.* at 188, 224. He observed black and blue discoloration on her left posterior thigh. *Id.* at 186. Plaintifff's knee flexion was from five (5) to ninety (90) degrees; her McMurray sign and pivot shift tests were positive; she had medial joint tenderness. *Id.* Dr. Rafiy's diagnostic impression was a left meniscus tear and

hamstring rupture. *Id.* He stated in his report that plaintiff may need arthroscopic surgery, and recommended pain medication, physical therapy, and a knee brace. *Id.* at 188.

Matthew Sichel, a physician's assistant working under Dr. Rafiy evaluated plaintiff on October 8, 2009. *Id.* at 189, 223. He assessed her rotator cuff strength at four (4) out of five (5). *Id.* at 189. Her right shoulder showed zero (0) to one hundred twenty (120) degrees abduction and flexion, and her left knee showed zero (0) to ninety (90) degrees flexion. *Id.* Her McMurray and impingement signs, and arm drop test were positive. *Id.* His diagnostic impression was a left hamstring rupture, a left knee meniscus tear, and rule out internal right shoulder derangement. *Id.* He recommended an MRI of her right shoulder and physical therapy. *Id.*

Plaintiff underwent an MRI of her right shoulder on October 15, 2009. *Id.* at 176–77, 195–96, 227–28. The MRI revealed degenerative changes in the acromioclavicular (AC) joint with osteophyte formation; signal abnormality in the anterior inferior aspect of the glenoid labrum, and irregularity on the anterior inferior aspect of the glenoid consistent with an old injury that had scarred-over; thickening of the anterior joint capsule; and tendinosis of the biceps tendon. *Id.* at 177.

On November 2, 2009, plaintiff saw Dr. Michael C. Schwartz at ProHealth, Division of Orthopedics and Sports Medicine, for her right shoulder, left knee, and hamstring pain. *Id.* at 190. Physical examination of the right shoulder revealed no atrophy, no erythema, and no scapular winging; external rotation strength was five out of five (5/5), and her supraspinatous strength was four plus out of five (4+/5); negative speed, load and shift, and apprehension tests; and positive near and Hawkins impingement sign. *Id.* Examination of her left knee revealed no evidence of swelling or erythema; full range-of-motion; full, pain-free extension and flexion to

one hundred thirty (130) degrees; weakness with knee flexion; five out of five (5/5) motor strength; no atrophy, varus or valgus instability, or effusion; negative Lachman test and posterior drawer; intact sensation, but with mild diffuse tenderness and tenderness over her hamstring. *Id.* An "MRI of the left knee appear[ed] to be within normal limits" and showed no evidence of a meniscal tear. *Id.* at 191. Dr. Schwartz's diagnostic impression was right shoulder rotator cuff tendinitis, a left partial hamstring tear, and left knee pain. *Id.* He recommended that she attend physical therapy and avoid lifting, and administered a cortisone injection in her right shoulder. *Id.*

Plaintiff attended physical therapy on January 27, 2010. *Id.* at 199–202. She described her pain in her left knee as eight (8) on a scale of one (1) to ten (10), and her pain in her shoulder as three (3) on a scale of one (1) to ten (10). *Id.* at 199.

On January 28, 2010, she saw physician's assistant Sichel for her left knee, hamstring, and right shoulder pain. *Id.* at 197, 98. Her right shoulder's flexion and abduction was ninety (90) degrees, her drop arm test was negative, her rotator cuff strength was four out of five (4/5), and impingement was positive. *Id.* at 198. Her left knee was tender, its flexion was one hundred (100) degrees, and her McMurray sign was positive. *Id.* X-rays of her left thigh revealed no fractures, or dislocations. *Id.* His diagnostic impression was a left hamstring rupture, left knee meniscus tear, right shoulder tendinosis and AC degeneration. *Id.* He injected her shoulder with lidocaine and Depro-Medrol, and recommended that she continue physical therapy. *Id.*

Dr. Michael P. Carroll of Island Orthopaedics and Sports Medicine, P.C. examined plaintiff on January 18, 2011. *Id.* at 211–12, 263. He stated that MRIs confirmed that she had a hamstring tear, for which she was attending physical therapy, but that it did not alleviate her

5

pain. *Id.* at 211. He noted that she walked normally, that she had tenderness in the left posterior thigh, and that her pain radiated down her leg to below the knee. *Id.* at 211–12. Neurologic exams showed normal motor, sensory, and reflex, and she had no back pain. *Id.* at 212. Her straight-leg test was negative, and she had a full range-of-motion in her knees. *Id.* He noted "retropatellar tenderness with a positive grind test consistent with chondromalacia." *Id.* However, knee x-rays were negative. *Id.* His impression was that she had "complex findings with possible radiculopathy in addition to having had her hamstring tear." *Id.* at 212, 263. He opined that she was unable to work due to her chronic pain, and referred her for electrodiagnostic (EMG) testing. *Id.* at 212, 263.

EMG tests performed on January 31, 2011 by Dr. Padmaja Aradhya, M.D. revealed "no electrophysiological evidence of entrapment neuropathy, myopathy, or segmental denervation to suggest radiculopathy." *Id.* at 215. Her bilateral peroneal motor studies, bilateral tibial motor studies, bilateral sensory studies, bilateral peroneal F-wave latencies, bilateral tibial F-wave latencies were all normal. *Id.* However, she noted "[r]educed recruitment in the left vastus lateralis and rectus femoris can be seen in patients with hamstring injuries," and suggested clinical correlation. *Id.*

On October 31, 2011, Dr. Rafiy completed a checklist assessment of plaintiff's abilities. *Id.* at 266. He opined that she could stand or walk for up to two (2) hours and sit for less than four (4) hours in an eight (8)-hour workday. *Id.* at 266. She could occasionally lift and carry ten (10) pounds. *Id.* He indicated no other limitations. *Id.*

D.  ALJ Decision

After applying the five (5)-step sequential analysis set forth in 20 C.F.R. § 404.1520, the ALJ found that plaintiff was "not disabled" within the meaning of the Social Security Act. *Id.* at 20. At the outset, the ALJ found that plaintiff met the insured status requirements through December 31, 2014 and that she had not engaged in substantial gainful activity since the onset date, September 9, 2009. Tr. 12. He found that she had a partially torn left hamstring and mild tendinosis in her left knee, 20 C.F.R. § 404.1520(c). Tr. 12. Furthermore, these impairments, in combination, limited her ability to stand, walk, lift, and carry. *Id.*

The ALJ also noted the MRI scans of plaintiff's right shoulder, which "disclosed degenerative changes in the acromioclavicular and glenohumeral joints, evidence of a prior injury to the glenoid labrum and tendinosis and/or tenosynovitis of the biceps and supraspinatus tendons, but no evidence of any tears." *Id.* However, he explained that although early examinations showed mild loss-of-motion, weakness, and positive impingement signs, more recent examinations "showed that claimant no longer had significant complaints," and "no clinical abnormalities" regarding her right shoulder. *Id.* "This strongly suggests that the claimant temporarily strained the tendons in the right shoulder causing some transient signs and symptoms, but that these abnormalities did not last twelve consecutive months." *Id.* at 12–13. Additionally, he explained that, "the degenerative changes seen in the right shoulder were age appropriate and not a cause of the claimant's signs or symptoms." *Id.* at 13. The ALJ explained that plaintiff indicated at the hearing that she had no difficulties performing tasks that require the use of her shoulder, such as sewing and knitting. *Id.* The ALJ further found that none of

7

plaintiff's severe impairments met or exceeded one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

At step three, the ALJ found that plaintiff has the residual functional capacity (RFC) to perform a full range of sedentary work. *Id.* He found that plaintiff's leg injury could reasonably be expected to cause her symptoms, but found her testimony regarding the extent of her symptoms not credible. *Id.* at 13–14. Specifically, he explained that "electrodiagnostic testing failed to disclose any neuropathy, myopathy or radidiculopathy, although it was consistent with the injury to the hamstring itself." *Id.* at 14. "Clinically, the claimant displayed persistent tenderness at this location, but motion was full, there were no sensory or reflex deficits, instability, effusion, soft tissue swelling, inflammation, atrophy, weakness or alteration in gait documented in the medical record." *Id.* And, although one medical opinion suggested that plaintiff's meniscus was torn, an MRI showed otherwise. *Id.*

Likewise, the MRI of her left knee "was essentially normal." *Id.* "Electrodiagnostic testing showed no neuropathy, myopathy or radiculopathy," and she had a full range-of-motion, full motor strength, normal sensation and reflexes, no atrophy, effusion, soft-tissue swelling, discoloration, inflammation, deformity, and no abnormality in gait. *Id.* He also noted that plaintiff's treatment was "conservative in nature." *Id.*

Furthermore, the ALJ again noted that plaintiff's daily activities, such as sewing and knitting, demonstrated that she was capable of sedentary work. *Id.* Moreover, Dr. Carroll's opinion that she could not work due to her chronic pain was based on one examination, and conflicted with the bulk of the medical evidence. *Id.*

At step four (4), the ALJ found that plaintiff RFC allowed her perform her past relevant work as an administrative assistant and assistant controller. *Id.* at 14. The ALJ explained:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. Although the claimant cannot perform the job demands of an administrative assistant as he [sic] states he actually performed the job, the claimant can perform the sedentary demands of this job as it is normally performed in the national economy as show [sic] in the Dictionary of Occupational Titles at section 169.167-010. The claimant indicated that the job as an assistant controller required him to sit, with some standing and walking, and lift and carry up to ten pounds. He [sic] can do this job as it was actually performed. Moreover, there are jobs in the Dictionary of Occupational Title for controllers that are consistent with sedentary work demands, although there are also controller positions that would be consistent with more strenuous exertional demands.

*Id.* at 14–15. The ALJ concluded, therefore, that plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 15.

## II. DISCUSSION

### A. Standards of Review

#### 1. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as that applied to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive such a motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual

allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679. The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

      2.  Review of Determinations by the Commissioner of Social Security

A court reviewing the final decision of the Commissioner may enter "judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court must consider whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and citation omitted). "In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted).

Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, this deferential standard of review does not apply to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Rather, courts have a

statutory and constitutional duty to ensure that the Commissioner has applied the correct legal standards, regardless of whether the Commissioner's decision is supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188–89 (2d Cir. 2004). If a court finds that the Commissioner has failed to apply the correct legal standards, the court must determine if the "error of law *might* have affected the disposition of the case." *Id.* at 189 (emphasis added). If so, the Commissioner's decision must be reversed. *Id.*; *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the application of the correct legal standard could lead only to the same conclusion, the error is considered harmless and remand is unnecessary. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

  B. Evaluation of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability benefits are only available where an individual has a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For the purposes of this section:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

11

42 U.S.C. § 423(d)(2)(A).

The regulations promulgated under the Social Security Act require the Commissioner to apply a five (5)-step sequential analysis to determine whether an individual is disabled under Title II of the Social Security Act. 20 C.F.R. § 404.1520; *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The first step of the sequential analysis requires the Commissioner to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) and (b). "Substantial work activity" "involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" "is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). If a claimant is doing "substantial gainful activity," the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). If the claimant is not engaged in any "substantial gainful activity," the Commissioner proceeds to the second step.

The second step requires the Commissioner to consider the medical severity of the claimant's impairment to determine whether he or she has a "severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment, or combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). To meet the duration requirement, the claimant's impairment must either be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The Commissioner will proceed to the

next step only if the claimant's impairment is medically severe and meets the duration requirement.

At the third step, the Commissioner considers whether the claimant has a medically severe impairment that "meets or equals one of [the] listings in appendix 1 to subpart P of [20 C.F.R. Part 404 of the Social Security Act] and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets or equals any of the listings and meets the duration requirement, the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant is not found to be disabled at the third step, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity [("RFC")] based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). The RFC considers whether "[the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). The RFC is "the most [the claimant] can still do despite [his or her] limitations." *Id.*

At the fourth step, the Commissioner compares the RFC assessment "with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f). If the claimant can still do his or her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot do his or her past relevant work, the Commissioner proceeds to the fifth and final step of the sequential analysis.

At the fifth step, the Commissioner considers the RFC assessment "and [the claimant's] age, education and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work,

the claimant is not disabled. *Id.* If the claimant cannot make an adjustment to other work, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proving first four (4) steps of the sequential analysis, while the Commissioner bears the burden at the last step. *See Talavera*, 697 F.3d at 151.

C. Application of the Five-Step Sequential Analysis

The Commissioner argues that the ALJ's finding that plaintiff was not disabled is supported by substantial evidence and that he properly assessed her credibility regarding her symptoms. Defendant's Brief. (Def.'s Br.) 12–16, 16–18. For the foregoing reasons, the Court agrees, and affirms.

The Court finds substantial evidence in the record to support the ALJ's findings at steps one (1) through three (3). Plaintiff's testimony establishes that she has not worked since March 25, 2009, when she was laid off. Tr. 23. Likewise, the record supports the ALJ's findings at step two (2) that her partially torn left hamstring and mild tendinosis of her left knee constituted severe impairments under 20 C.F.R. § 404.1520(c) because they limited her ability to stand, walk, lift, and carry. *See* Tr. 266. The Court agrees with the ALJ that the record does not support a finding that plaintiff's shoulder injury satisfied the twelve (12)-month duration requirement set forth in 20 C.F.R. § 404.1509. And, there is no evidence in this record to conclude that plaintiff's hamstring and knee injuries resulted in "gross anatomical deformity" coupled with "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion[,]" as required by Listing 1.02.

When a claimant's impairments fail to meet or equal any of the Listings, the Commissioner must assess the claimant's RFC before proceeding to the fourth step of

the sequential analysis. 20 C.F.R. §§ 404.1520(e); 404.1545(a)(5). The Commissioner's RFC assessment must consider "all of the relevant medical and other evidence" in the case record, including "any statements about what [the claimant] can still do that have been provided by medical sources" and any "descriptions and observations of [the claimant's] limitations from [his or her] impairments, including limitations resulting from [his or her symptoms], such as pain, provided by [the claimant] or [other persons]." 20 C.F.R. § 404.1545(a)(3). In addition, the Commissioner must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Both a "limited ability to perform certain physical demands or work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)" (20 C.F.R. § 404.1545(b)), and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting" (20 C.F.R. §404.1545(c)), may reduce a claimant's ability to do past or other work. 20 C.F.R. § 404.1545(e) provides that:

> [w]hen [a claimant] ha[s] severe impairment(s), but [his or her] symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in [the Listings], [the Commissioner] will consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [his or her] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...In assessing the total limiting effects of [a claimant's] impairment(s) and any related symptoms, [the Commissioner] will consider all of the medical and nonmedical evidence...

20 C.F.R. § 404.1545(e).

15

In "determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility). "Because it is the function of the agency, not reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, we will defer to its determinations as long as they are supported by substantial evidence." *Reynolds v. Colvin*, 570 F. App'x 45, 49 (2d Cir. 2014) (summary order) (internal citations omitted). The Second Circuit has "repeatedly held that a claimant's testimony concerning his pain and suffering is not only probative on the issue of disability, but 'may serve as the basis for establishing disability, even when such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence.'" *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). Thus, where there is a "medically determinable impairment[] that could reasonably be expected to produce [the claimant's] symptoms, such as pain," the ALJ "must then evaluate the intensity and persistence" of the symptoms to determine how the symptoms limit a claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). "Further, because a claimant's symptoms, such as pain, 'sometimes suggest a greater severity of impairment than can be shown by objective

16

medical evidence alone,' once a claimant has been found to have a pain-producing impairment, the Commissioner may not reject the claimant's statements about his pain solely because objective medical evidence does not substantiate those statements." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 349–50 (E.D.N.Y. 2010) (citing 20 C.F.R. § 404.1529(c)(2)-(3)).

In assessing a claimant's allegations concerning the severity of his symptoms, an ALJ must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). Second, [i]f the claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Meadors v. Astrue*, 370 Fed. Appx. 179, 183 n.1 (2d Cir. 2010) (citing 20 C.F.R. 404.1529(c)(3)). An ALJ who finds that a claimant is not credible must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is

17

supported by substantial evidence." *Rivera v. Astrue,* No. 10-civ-4324, 2012 WL 3614323, at *14 (E.D.N.Y. Aug. 21, 2012) (quoting *Taub v. Astrue,* No. 10-civ-2526, 2011 WL 6951228, at *8 (E.D.N.Y. Dec. 30, 2011).

The ALJ properly followed this two-step process, and found that plaintiff has the RFC to perform sedentary work based on substantial record evidence, in spite of her subjective complaints of pain. In making this finding, he specifically relied on the results of the electrodiagnostic testing as well as the MRIs, which failed to disclose neuropathy, myopathy, or radiculopathy in plaintiff's hamstring and right knee, though they did disclose the existence of a hamstring injury. Tr. 14, 215; *see* 20 C.F.R. § 404.1529(c)(2) (providing that ALJ will consider "objective medical evidence" in assessing claimant's subjective complaints of pain). Likewise, he properly considered her daily activities, such as knitting, sewing, and watching television, 20 C.F.R. § 404.1529(c)(3)(i), and her "conservative" treatment, 20 C.F.R. § 404.1529(c)(3)(iii), which both suggest that she is capable of performing sedentary work. *E.g.,* Tr. 27, 188. In sum, the Court finds that the ALJ did not unreasonably reject plaintiff's subjective complaints of pain when determining her RFC, but instead assessed these complaints in light of the factors set forth in 20 C.F.R. § 404.1529(c).

Having found that plaintiff had the RFC required for sedentary work, it follows that she could perform her past relevant work as an office controller, as defined in the Dictionary of Occupational Titles (DOT) at Section 169.167-010. *See* 20 C.F.R. § 404.1560(b)(2) (providing that ALJ may use DOT at step four (4) to determine whether claimant can perform past relevant work).

### III. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is granted.

**SO ORDERED.**

                                            s/ Sandra J. Feuerstein
                                            Sandra J. Feuerstein
                                            United States District Judge

Dated: September 30, 2015
       Central Islip, New York